# IN THE COURT OF CRIMINAL APPEALS OF THE STATE OF OKLAHOMA

WILLIAM FRANKLIN LAFFOON,    )
    )
        Appellant,    )    NOT FOR PUBLICATION
    )
v.    )    Case No. F-2011-453  **FILED**
    )    **IN COURT OF CRIMINAL APPEALS**
THE STATE OF OKLAHOMA,    )    **STATE OF OKLAHOMA**
    )
        Appellee.    )    MAR 2 9 2013

**OPINION**    MICHAEL S. RICHIE
    CLERK

**A. JOHNSON, JUDGE:**

Appellant William Franklin Laffoon was tried by jury and convicted of Domestic Abuse – Assault and Battery (Count 1), in violation of 21 O.S.Supp.2009, § 644(C); Assault and Battery with a Dangerous Weapon (Count 2), in violation of 21 O.S.Supp.2006, § 645; Kidnapping (Count 3), in violation of 21 O.S.Supp.2009, § 741; and Rape – First Degree (Count 4), in violation of 21 O.S.Supp.2006, § 1111(B) in the District Court of Wagoner County, Case No. CF-2010-153. The jury fixed punishment at life imprisonment for Count 1, fifty years imprisonment for Count 2, seventy-five years imprisonment for Count 3, and life imprisonment without the possibility of parole for Count 4. The Honorable Darrell G. Shepherd, District Judge, who presided at trial, sentenced Laffoon according to the jury's verdict and ordered the sentences to be served consecutively.

We find reversal is not required and affirm the Judgment and Sentence of the District Court.

EXHIBIT 2

## FACTS

Appellant Laffoon lived with his wife, Denna Merryman, in a garage apartment attached to his parents' home.  On January 29, 2010, Laffoon told Merryman that he had dreamt she had had sex with his nephew.  As a result of the dream he punished her over the next several days by beating her with his fists, biting her, and on one occasion throwing a butter knife at her with sufficient force to injure her arm.  He did these things in the dark to increase her helplessness.  He held her captive in their room for three days with the door padlocked and the windows screwed shut.  He gave her no food and required her to use a bucket instead of the toilet.

On January 31, 2010, in an effort to stop the punishment, she told him that she had indeed had sex with his nephew just as he had dreamt.  She fabricated the details of that sexual encounter to match the details of the dream.  Laffoon, aroused by her story, raped her anally.  She resisted, screaming for help.   While he was raping her, Laffoon told her he would never again have vaginal sex with her because "someone else had been there." (Tr. Vol. 1 at 276). He raped her in that manner three times that day and told her if she reported him to the police, he would chop her to pieces with an ax and throw the pieces on her parents' driveway.

On February 1, 2010, Laffoon allowed Merryman to leave the garage with him so they could file her tax return.  Laffoon wanted to use the tax return money to buy some old trucks.  Merryman wanted to buy a

2

reliable car. Laffoon had previously destroyed her old car by kicking out the windows and damaging the dashboard. Only Merryman filed taxes because only Merryman had held a job. She had worked as a cashier at a convenience store, but Laffoon made her quit when her employer said Laffoon had to stop hanging out at the store. Other than the times Merryman had left Laffoon to visit her family, Laffoon watched her at all times and followed her everywhere.

Laffoon's father drove Laffoon and Merryman to file the tax return. Merryman did not tell Laffoon's father about the abuse because she believed telling would make things worse for her. She testified she believed if she told, Laffoon would stab her right there in the truck and his father would do nothing about it. The three went first to Merryman's aunt's home to pick up Merryman's W-2 form. On the way, Laffoon told Merryman if she tried "anything stupid" that he would stab her and everyone else with the knife he had in his pocket (Tr. Vol. 1 at 287).

Merryman and Laffoon walked up to the aunt's door; the aunt invited Merryman into the house, but not Laffoon. The aunt noticed Merryman's face was bruised and wanted to talk to her alone. Merryman refused to come into the house because Laffoon was behind her holding a knife to her back. They got the W-2 form and Laffoon's father drove them to the H&R Block office to file the tax return. Laffoon did not go inside because he was embarrassed that Merryman's face was bruised and swollen.

3

Once inside the building, Merryman asked the tax preparer to call police. Merryman told the 911 dispatcher over the telephone that Laffoon had beaten and stabbed her and that she was afraid he would kill her. She also told the dispatcher that Laffoon was in a black Ford F-150 parked outside the office and that he had a knife and had threatened her with it.

The police arrived at the H&R Block office, secured Merryman, and arrested Laffoon and his father. Police discovered a pocket knife in Laffoon's pocket.

On February 2, 2010, Merryman went to the hospital for treatment of her injuries, including a hairline fracture on her cheekbone, major bruising on her body, bite marks, and a stab wound. Merryman testified as a result of the beatings her left kidney no longer functioned properly.

Before the events of January 29th through February 1st, 2010, Merryman had reported to police that Laffoon's former wife, Milissa McKinney, had assaulted her. Once Laffoon was in custody, however, Merryman told police that she had lied about McKinney, and that Laffoon had forced her to do so.

Before his relationship with Merryman, Laffoon had lived with McKinney for nine years. They considered themselves married by common law, and had two children together. McKinney testified at

4

Laffoon's trial about the abuse she suffered at Laffoon's hands, the same kind inflicted upon Merryman.

McKinney testified that during her nine years with Laffoon she and Laffoon lived with Laffoon's parents in the same garage where Merryman and Laffoon lived. McKinney said Laffoon accused her of sleeping with his uncle and then locked her in the garage apartment and would not allow her to leave. During this period of confinement, Laffoon violently assaulted her by slapping, punching, biting, and hitting her with objects. McKinney said she finally told Laffoon that she slept with the uncle to get Laffoon to stop beating her.

Laffoon would not allow McKinney to leave the room alone, following her even into the bathroom. Laffoon forced McKinney to tell police that his uncle beat and raped her. Ultimately she sought refuge in a women's shelter and caused charges to be filed against Laffoon. When she left the shelter, however, Laffoon forced her to recant her story to the police.

McKinney testified that Laffoon resumed his abuse of her after she left the shelter. She described an incident when he became so angry he took her to the garage apartment, made her bend over, pull down her pants and spread her legs. He then inserted a lighted cigarette into her vagina. McKinney testified that Laffoon told her he had done that because he did not want her to have sex ever again

5

without pain.  The cigarette burn left permanent scars on the inside and outside of McKinney's vagina.  During this incident, Laffoon threatened to get a clothes hanger, stick it inside her and rip her insides out so she could never have sex again.  There was other abuse.

McKinney escaped and called police from a neighbor's house. Charges were filed against Laffoon, but dismissed when McKinney again recanted her story and falsely blamed the abuse on someone other than Laffoon.  She explained the cigarette burn to her vagina by saying it was self-inflicted.

While she was with Laffoon, McKinney was not allowed to keep a job because he did not want her out of his sight.  On several occasions Laffoon beat McKinney because he said he had dreams about her having sex with someone else.  The beatings typically ended with Laffoon forcing McKinney to have sex with him.  At times Laffoon had forced McKinney to have anal sex against her will.  McKinney feared Laffoon even after she left him. He had threatened to kill her, chop her up, cook her meat and feed it to the dogs.

Laffoon displayed the same pattern of abuse with former girlfriend, Sheila Frye, with whom he had two children.  Frye also testified at Laffoon's trial. She told the jury that during her two year relationship with Laffoon, he falsely accused her of having sex with other people based on dreams he had about her.  Those episodes resulted in his beating her until she confessed to his accusations.  Frye was not allowed to hold jobs because Laffoon did not want her to be away from him.  During one exception to this rule, she

6

worked but he stayed in the parking lot of her workplace. In one incident, Laffoon threw a glass at Frye knocking her teeth out.

Frye testified that beatings usually culminated in rape. During a rape, Laffoon had once held a pair of scissors to Frye's throat. Laffoon would bite Frye repeatedly during these sessions. Laffoon threatened Frye with his pocket knife. On multiple occasions Laffoon told Frye that he would kill her and on one occasion threatened to kill her aunt. Like Merryman and McKinney, Frye had falsely accused other people of the abuse in order to pacify Laffoon.

## DISCUSSION

### 1.
### Evidence of Other Crimes

Laffoon claims the trial court erred by permitting the State to present other crimes evidence through witnesses McKinney and Frye. As described above, these witnesses alleged they had been beaten and raped by Laffoon under circumstances very similar to Merryman's. Laffoon contends first that the evidence was not admissible under 12 O.S.Supp.2007, § 2413 because it resulted in unfair prejudice to him.

Prior to trial, the State filed a *Burks*[1] notice of intent to use McKinney's and Frye's testimony at trial, and Laffoon filed a motion in limine to exclude the testimony. The district court held an extensive pretrial hearing on the admissibility of the proposed testimony. At that hearing, the district court

---

[1] *Burks v. State*, 1979 OK CR 10, 594 P.2d 945.

7

heard testimony from Merryman, McKinney, and Frye describing the sexual and physical abuse they suffered, and the circumstances surrounding that abuse. The court also heard argument on the prejudicial effect weighed against the probative value of McKinney's and Frye's testimony from defense counsel and the prosecutor.

In her argument to the court, the prosecutor detailed the many specific similarities among McKinney's and Frye's experiences with Laffoon and Merryman's experiences with him. Comparing the abuse suffered by McKinney and Merryman, the prosecutor summarized McKinney's testimony and argued to the judge:

> In this case, the State would argue that both Milissa McKinney and Denna Merryman [the victim] had extremely similar circumstances when they were raped. The rapes were premeditated – or precipitated by jealousy, by a dream in which the defendant believed they were cheating on him.
>
> Pursuant to that dream, he explained that dream to them, and he proceeded to beat them until they admitted that this had happened.
>
> He would become aroused while he was beating them, he would rape them anally, turn off the lights while he beat them.
>
> He would not let them look at men because of his jealousy. They both testified that they were instructed to look at the floor.
>
> They were not allowed to go to the bathroom alone. They were not allowed to be alone.

They were held captive in the same exact garage apartment, at the same exact address, in the exact same way.

They both had items thrown at them. They both had knives held to their throat. They were both accused of having fuck fests.

They were both forced to file false police reports that someone else had committed the crime, which will bring us to the Burks notice, for identity purposes, on the domestic violence issue.

And, in filing those false police reports, those false police reports were precipitated by a beating that was precipitated by the previous domestic partner and domestic violence victim, who had children in both cases. The exact same argument was had over whether or not the defendant was allowed to see those children.

(Tr. Hrg, March 24, 2011 at 84-85). And the prosecutor summarized Frye's

testimony and argued to the judge:

Just would reiterate the same legal authority and logic illustrated after Milissa McKinney's testimony and note here that the common facts, although we don't have all 16 points of commonality [as with McKinney], we do have bites; she wasn't allowed to go to the bathroom alone; she was held captive in the home, the marital home; she wasn't allowed to look at men; wasn't allowed to go anywhere alone (I think I said that already); she was beat on account of an allegation that she had cheated; the jealousy precipitated the beatings; I believe she testified she was drug by the hair; he would turn the lights out; the beatings would end in sex; he also threw things at this victim, including glass; he also held a knife and scissors to her throat to entice her to have – to force her to have sex; he also encouraged and forced her to file a false insurance claim of which he received the benefit.

(Tr. Hrg, March 24, 2011 at 102-103).   Having heard the testimony of all three women and argument of counsel, the court ruled in the case of McKinney that:

> In view of Burks versus State, in going through all of the factors that Burks sets forth, and in view of the striking similarities of the allegations that each of the witnesses make against the defendant, the Court finds that it will be admissible.   And the jury can then, of course, make whatever they want to of it, "it" being the testimony of Ms. McKinney.

(Tr. Hrg, March 24, 2011 at 88).   As to Frye's testimony, the court ruled:

> Okay.     As with Ms. McKinney, I believe these allegations have been established, by clear and convincing evidence, and, in view of the criteria set forth by Burks versus State, including weighing the relevance of the allegations against the danger of unfair prejudice, the Court finds that they are highly relevant, since there are striking similarities in the allegations with all three women; therefore, the evidence will be admitted to the jury.

(Tr. Hrg, March 24, 2011 at 104).

At trial, Laffoon renewed his objections to McKinney's and Frye's testimony.   The trial judge overruled the objections and the women testified much as they had at the pretrial *Burks* hearing.   We review a trial court's decision to admit or exclude evidence under 12 O.S. § 2413 for an abuse of discretion.   *James v. State*, 2009 OK CR 8, ¶ 11, 204 P.3d 793, 798.

Laffoon argues first that McKinney's and Frye's testimony was improperly admitted under 12 O.S. 2413 as sexual propensity evidence because the trial judge did not properly weigh its probative value against its prejudicial effect, and because Frye testified to a sexual assault committed against her by Laffoon with a lit cigarette, a crime unlike the rape charged in this case.

10

In 12 O.S.Supp.2007, § 2413, the Legislature, carved out an exception to the propensity evidence prohibition set out in 12 O.S.2001, § 2404(B) in cases wherein the defendant is accused of sexual assault and the evidence sought to be introduced consists of evidence of other instances of sexual assault. *Horn v. State*, 2009 OK CR 7, ¶ 20, 204 P.3d 777, 782-783.   Specifically, 12 O.S.Supp.2007, § 2413(A) provides:

> In a criminal case in which the defendant is accused of an offense of sexual assault, evidence of the defendant's commission of another offense or offenses of sexual assault is admissible, and may be considered for its bearing on any matter to which it is relevant.

In *Horn*, this Court held that sexual propensity evidence is not automatically admissible under § 2413, but, like other relevant evidence, is subject to the balancing test of § 2403, that provides otherwise admissible and relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice.   *Horn,* 2009 OK CR 7, ¶ 40, 204 P.3d at 786.   *See also James*, 2009 OK CR 8, ¶ 9, 204 P.3d 793, 797 ("when evidence is proffered under 12 O.S. §§ 2413 or 2414, the trial court retains the authority – *and responsibility* – to consider, on a case-by-case basis [under § 2403], whether the probative value of the proffered evidence is substantially outweighed by an unfairly prejudicial effect").   The *Horn* court instructed that when analyzing the dangers of propensity evidence under § 2403, the trial court "should consider: (1) how likely is it such evidence will contribute to an improperly-based jury verdict; and (2) the extent to which such evidence will

11

distract the jury from the central issues of the trial." *Horn*, 2009 OK CR 7, ¶ 40, 204 P.3d at 786. *Horn* also directs that "[sexual] propensity evidence must be established by clear and convincing evidence." *Id.*

It is clear from the trial court judge's comments from the bench that he weighed the probative value against the prejudicial effect of the evidence and found the probative value so substantial as evidence of a highly peculiar method of operation that it was not outweighed by its potential prejudicial effect. Further, as directed by *Horn*, the trial judge's ruling included an explicit finding that the proposed propensity evidence was established by clear and convincing evidence. This conclusion is not clearly erroneous. We are especially deferential to the trial court here because the proof of the allegations in this case rested solely on the testimony of each woman and the trial judge's assessment of her credibility. Indeed, *Horn* recognizes this situation will arise and specifically provides for it, stating "as proof of the prior act may largely rest upon testimony of the victim of that prior act, the credibility of that individual would be a factor for the court's consideration." *Horn*, 2009 OK CR 7, ¶ 40, 204 P.3d at 786. Sheila Frye's and Milissa McKinney's testimony about Laffoon's sexual assaults against them was properly admitted under 12 O.S. § 2413.

Laffoon also contends that McKinney's testimony that he burned the inside of her vagina with a lit cigarette was improperly admitted under § 2413 because it was conduct unlike the anal rapes he allegedly committed against

12

Merryman. Contrary to Laffoon's assertions, the violent and sexual nature of burning McKinney's vagina clearly fits Laffoon's pattern of combining violence and sexual abuse in Merryman's case.   Specifically, Laffoon's abusive acts with Merryman consistently intertwined violence and sex. McKinney's testimony about the cigarette assault was properly admitted as evidence of Laffoon's commission of another offense of sexual assault.

In connection with this claim, Laffoon also argues that the testimony about burning McKinney's vagina with a cigarette was improperly admitted under § 2413 because charges against him for that crime were dropped.   The plain language of § 2413 speaks only of "evidence of the defendant's commission of another offense or offenses of sexual assault," not evidence of the defendant's prior convictions for another offense of sexual assault.   We are not convinced that the Legislature intended to preclude use of evidence arising from prior uncharged or unadjudicated acts of sexual assault, nor have we have ever applied the statute in such a manner. *See e.g.*, *Johnson v. State*, 2010 OK CR 28, 250 P.3d 901 (finding no error under § 2413 where trial court permitted testimony about rape committed by defendant six years earlier against different victim in New Mexico in which convictions were dismissed on appeal for speedy trial violation); *James*, 2009 OK CR 8, 204 P.3d 793 (finding no error in admission of testimony, without evidence of conviction, that defendant had sexually molested former stepdaughter decade earlier in manner similar to that in which he molested

13

child in case being tried); *Horn*, 2009 OK CR 7, 204 P.3d 777 (finding no error

in admission of testimony about previous uncharged episodes in which

defendant had sex with child victim).[2]

Because the evidence of Laffoon's sexual assaults against McKinney and

Frye was properly admissible as propensity evidence under § 2413, and

because the record shows that the trial judge considered both the probative

value of the evidence and its potential for unfair prejudice, the trial judge

neither committed legal error nor rendered a judgment that was clearly against

the logic and effect of the facts presented. He did not abuse his discretion. *See*

*Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 2047, 135 L.Ed.2d

392 (1996)("[a]district court by definition abuses its discretion when it makes

an error of law"); *Lott v. State*, 2004 OK CR 27, ¶ 96, 98 P.3d 318, 344 (defining

abuse of discretion as a "clearly erroneous conclusion and judgment, one that

is clearly against the logic and effect of the facts presented"). Laffoon was not

denied a fair trial by admission of this evidence.

Laffoon also argues that McKinney's and Frye's testimony was

inadmissible as evidence of other crimes, wrongs, or bad acts because it did

---

[2] In *United States v. Guidry*, 456 F.3d 493, 502 (5th Cir. 2006), the United States Court of Appeals for the Fifth Circuit reached a similar conclusion in its construction of Rule 413 of the *Federal Rules of Criminal Procedure*, the rule upon which 12 O.S. § 2413 is modeled. Specifically, the *Guidry* court explained that

> The Rule provides no basis for limiting admissibility of evidence of the act of doing or perpetrating other sexual offenses only to those acts proven by conviction. Accordingly, the evidence of the act of doing or perpetrating an offense is admissible under the Rule.

14

not fall into any recognized exception to 12 O.S. § 2404(B).  Section 2404(B) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

In addition to the enumerated exceptions listed in § 2404(B), this court has consistently held that evidence of other crimes is admissible under § 2404(B) if, among other things, it is evidence of a common scheme or plan. *Williams v. State*, 2008 OK CR 19, ¶ 37, 188 P.3d 208, 219; *Luna v. State*, 1992 OK CR 26, ¶ 8, 829 P.2d 69, 72.  Normally common scheme or plan evidence requires a showing of some visible connection between the previous crimes and the crimes being tried. *Williams*, 2008 OK CR 19, ¶ 37, 188 P.3d at 219; *Hammon v. State*, 1995 OK CR 33, ¶ 64, 898 P.2d 1287, 1302; *Jones v. State*, 1989 OK CR 66, ¶ 15, 781 P.2d 326, 329.  However, evidence of other offenses that are "characterized by a highly peculiar method of operation will suffice to show a common scheme." *Hall v. State*, 1980 OK CR 64, ¶ 5, 615 P.2d 1020, 1022.  In *Welch v. State*, 2000 OK CR 8, ¶ 11, 2 P.3d 356, 366, this Court clarified that evidence of a highly peculiar method of operation, also referred to as "signature evidence," is more appropriately considered under § 2404(B)'s identity exception "because distinctive methods of operation are indicative of who perpetrated the crime," whereas the "plan exception . . . deals primarily with the admission of other crimes evidence to show the commission of one

15

crime facilitated the other." *See also Owens v. State*, 2010 OK CR 1, ¶ 16, 229 P.3d 1261, 1267(explaining that "highly peculiar method of operation" constitutes "signature crime" that goes to § 2404(B)'s identity exception); *Williams*, 2008 OK CR 19, ¶ 37, 188 P.3d at 219 (recognizing that identity may be proved "by a highly peculiar method of committing a crime," and holding, therefore, that evidence of other crimes or bad acts is admissible under § 2404(B), when it "is so unusual and distinctive as to be like a signature").

In this instance, in addition to being charged with rape, Laffoon was charged with domestic abuse – assault and battery, and assault and battery with a dangerous weapon. In opening statement defense counsel pointed to a third party, Milissa McKinney, as the person who beat Merryman and caused her injuries. Defense counsel presented testimony from a police officer who took a report from Merryman that she had been punched by someone at a Tulsa club on the weekend at issue, and cross-examined Merryman at length about her statement to the officer that McKinney assaulted her. The defense also presented testimony from Laffoon's father who testified that he never heard sounds of assault coming from the garage apartment attached to his residence and that he never saw Laffoon strike Merryman. Laffoon's father also testified that Merryman told him that it was Milissa McKinney who assaulted her and caused her bruises. The defense also presented the testimony of Laffoon's mother that, while she could easily hear sounds from the attached garage apartment, on the weekend at issue she heard no screams or cries for

16

help.  Laffoon's mother also testified Merryman told her that it was McKinney who assaulted her and caused her black eye and bruising.  Also, in closing, the defense argued that Laffoon could not have committed the assaults that caused Merryman's injuries because, among other things, none of Laffoon's family members heard screams or cries for help from the garage apartment during the weekend of the alleged abuse.

From the opening statement of the defense through its presentation of evidence and closing argument, Laffoon's identity as Merryman's attacker was at issue.  For that reason the similar circumstances whereby he assaulted and confined McKinney and Frye, and then coerced them to blaming others for their injuries, became highly relevant as signature evidence tending to establish his identity as Merryman's attacker.  We conclude McKinney's and Frye's testimony was admissible under the identity exception of 12 O.S. § 2404(B) as unique signature evidence of identity.

Because the evidence of Laffoon's assaults and associated conduct against McKinney and Frye was relevant to the identity of Merryman's attacker, and because the record shows that the trial judge considered both the probative value of the evidence and its potential for unfair prejudice, the trial judge neither committed legal error nor rendered a judgment that was clearly against the logic and effect of the facts presented.  The trial judge did not abuse his discretion.  *See Koon*, 518 U.S. at 100, 116 S.Ct. at 2047, 135 L.Ed.2d 392 (1996)("[a]district court by definition abuses its discretion when it makes an

error of law"); *Lott*, 2004 OK CR 27, ¶ 96, 98 P.3d at 344 (defining abuse of discretion as a "clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented").   Laffoon was not denied a fair trial.

**2.**<br>**Excessive Sentence**

Laffoon claims next that his sentence is excessive and requires modification because the admission of other crimes evidence caused the jury to punish him for those crimes in addition to the charged crimes.  This Court will not modify a sentence within the statutory range "unless, considering all the facts and circumstances, it shocks the conscience." *Rea v. State*, 2001 OK CR 28, ¶ 5, n. 3, 34 P.3d 148, 149 n.3.   Here, there is no dispute that Laffoon's sentences are with the prescribed statutory ranges.   We therefore review the claim under our shock-the-conscience standard.

In support of this claim, Laffoon asserts without elaboration that "[i]t is very clear that Mr. Laffoon's jury was sentencing [him] not only for the four counts of which they convicted him, but for the offenses he had allegedly previously committed as well" (Aplt's Brief at 27).   Despite this emphatic assertion of obvious error, we find nothing in the record making it clear that the jury sentenced Laffoon for anything other than the crimes for which he was charged.   Furthermore, as discussed above, the evidence of other sexual assaults and domestic abuse committed by Laffoon was properly admitted as

18

sexual assault propensity evidence or identity evidence; also, jurors were instructed on the limited use they could make of that evidence.[3]

Jurors are presumed to follow their instructions, and Laffoon neither points to a portion of the record, nor proffers evidence rebutting this presumption. *See Mitchell v. State*, 2011 OK CR 26, ¶ 124, 270 P.3d 160, 187 ("[i]t is well established that juries are presumed to follow their instructions"). Absent any evidence showing that jurors did not follow the judge's limiting instruction, we are not persuaded that Laffoon's sentence is excessive because jurors inflated it as punishment for the offenses Laffoon committed against Frye and McKinney.   Given Laffoon's multiple previous felony convictions proved during the sentencing phase of his trial, including two previous convictions for assault and battery - domestic abuse, and given the severity and nature of the crimes committed in this case, the sentences imposed [life (Count 1), fifty years (Count 2), seventy-five years (Count 3), and life without parole (Count 4)] do not shock our conscience.

In connection with this claim, Laffoon also contends that the trial judge rendered his sentence excessive by ordering his individual sentences to run

---

[3] Specifically, the trial judge instructed jurors that:

> This evidence has been received solely on the issue of the defendant's motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. This evidence is to be considered by you only for the limited purpose for which it was received.

(O.R. 196).  Additionally, in closing argument, defense counsel reread this instruction to jurors and emphasized its importance in this case.

consecutively.  The decision to run sentences consecutively or concurrently is left to the sound discretion of the trial court.  22 O.S.2001, § 976; *Riley v. State*, 1997 OK CR 51, ¶ 20, 947 P.2d 530, 534.  Absent an abuse of that discretion, this Court will not modify a sentence. *Kamees v. State*, 1991 OK CR 91, ¶ 21, 815 P.2d 1204, 1208-1209; *Pierce v. State*, 1990 OK CR 7, ¶ 46, 786 P.2d 1255, 1267.  In the context of concurrent versus consecutive sentencing, this Court has expressly stated that an abuse of discretion is "any unreasonable, unconscionable and arbitrary action taken without proper consideration of the facts and law . . ." *Riley*, 1997 OK CR 51, ¶ 20, 947 P.2d at 534-535; *see also Neloms v. State*, 2012 OK CR 7, ¶ 35, 274 P.3d 161, 170 (describing abuse of discretion in consecutive sentencing context as "any unreasonable or arbitrary action taken without proper consideration of the facts and law pertaining to the matter at issue," or alternatively as "a clearly erroneous conclusion and judgment, one that is clearly against the logic and effect of the facts presented").  Unless shown otherwise, this Court presumes that a trial judge's decision to run sentences consecutively complies with the law and is not the result of passion or prejudice. *Riley*, 1997 OK CR 51, ¶ 21, 947 P.2d at 534.  That is, this Court presumes the decision was neither unreasonable, unconscionable, nor arbitrary, nor taken without proper consideration of the facts and law.  It is Laffoon's burden, therefore, to rebut the presumption.

In this instance, Laffoon points to no evidence showing that the trial judge reached his sentencing decision without proper consideration of the facts and law, or that the decision is clearly against the logic and effect of the facts presented, and no such evidence is apparent to us from this record. We find no abuse of discretion.

## DECISION

The Judgment and Sentence of the district court is **AFFIRMED**. Pursuant to Rule 3.15, *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (2013), the **MANDATE** is **ORDERED** issued upon delivery and filing of this decision.

AN APPEAL FROM THE DISTRICT COURT OF WAGONER COUNTY
THE HONORABLE DARRELL G. SHEPHERD, DISTRICT JUDGE

**APPEARANCES AT TRIAL**

JAY K. RAMEY
1408 S. DENVER AVENUE
TULSA, OK 74119
ATTORNEY FOR DEFENDANT

MICHON HUGHES
ASSISTANT DISTRICT ATTORNEY
307 E. CHEROKEE, THIRD FLOOR
WAGONER, OK 74464
ATTORNEY FOR STATE

**APPEARANCES ON APPEAL**

RICKI J. WALTERSCHEID
P. O. BOX 926
NORMAN, OK 73070
ATTORNEY FOR APPELLANT

E. SCOTT PRUITT
OKLAHOMA ATTORNEY GENERAL
TIMOTHY J. DOWNING
ASSISTANT ATTORNEY GENERAL
313 N.E. 21ST STREET
OKLAHOMA CITY, OK 73105
ATTORNEYS FOR APPELLEE

**OPINION BY: A. JOHNSON, J.**
**LEWIS, P.J.: Concur**
**SMITH, V.P.J.: Concur**
**LUMPKIN, J.: Concur**
**C. JOHNSON, J.: Concur**
RA

21