In the District Court of WAGONER County

**State of Oklahoma**

WILLIAM F. LAFFOON          )
      Petitioner,          )
                   )
vs.          )    Case No. CF-2010-153
                   )
STATE OF OKLAHOMA,          )
      Respondent,          )

WAGONER COUNTY, OKLAHOMA
FILED
IN DISTRICT COURT

APR **1 5** 2014

JAMES E. HIGHT
COURT CLERK

## APPLICATION FOR POST-CONVICTION RELIEF

### PART A

I, William F. Laffoon, whose present address is the Cimarron Correctional Facility, 3200 S. Kings Hwy., Cushing, Oklahoma 74023, hereby apply for relief under the Post-Conviction Procedure Act, Section 1080 et seq. of Title 22.

The sentence from which I seek relief is as follows:

1.    (a) Court in which sentence was rendered Wagoner County District Court
    (b) Case Number CF-2010-153

2. Date of sentence May 27, 2011

3. Terms of sentence LIFE, 50 YEARS, 75 YEARS, LIFE WITHOUT PAROLE

4. Name of Presiding Judge Honorable Darrell Shepherd

5. Are you now in custody serving this sentence? Yes (X)  No ( )
Where? Cushing, OK.

6. For what crime or crimes were you convicted? Domestic A & B, A & B With Dangerous Weapon, Kidnapping, Rape of Spouse

7. Check whether the finding of guilty was made:

After plea of guilty ( )    After plea of not guilty (X)

8. If found guilty after plea of not guilty, check whether the finding was made by:

A jury (X)    A judge without a jury ( )

9. Name of lawyer who represented you in trial court:

Mr. Jay Ramey out of Tulsa, OK.

**EXHIBIT 3**

10. Was your lawyer hired by you or your family? Yes ( ) No ( X)

Appointed by the court? Yes (X)     No ( )

11. Did you appeal the conviction? Yes (X) No ( )

To what court or courts? _____OCCA_____

12. Did a lawyer represent you for the appeal? Yes (XX)     No ( )

Was it the same lawyer as in No. 9 above? Yes ( ) No (XX)

If "no," what was this lawyer's name? Ricki J. Walterscheid

Address? CIDS, P.O. Box 926, Norman, OK. 73070

13. Was an opinion written by the appellate court? Yes (X) No ( )

If "yes," give citations if published: ___unpublished_____

_____

If not published, give appellate case no.: F-2011-453  (denied March 29, 2013)

14. Did you seek any further review of or relief from your conviction at any other time in any court? Yes ( )    No (XX)

If "Yes," state when you did so, the nature of your claim and the result (include citations to any reported opinions.) _____N/A_____



## PART B

(If you have more than one proposition for relief, attach a separate sheet for each proposition. Answer the questions below as to each additional proposition, labeled SECOND PROPOSITION, THIRD PROPOSITION.)


I believe that I have Six-6 (number of) propositions for relief from the conviction and sentence described in PART A.


This is the first proposition:

APPELLATE COUNSEL ACTED IN AN "OBJECTIVELY UNREASONABLE", UNPROFESSIONAL, INCOMPETENT & INEFFECTIVE MANNER WHEN SHE REFUSED/FAILED TO RECOGNIZE, INVESTIGATE INTO & RAISE MUCH "STRONGER" GROUNDS ON DIRECT APPEAL, THUS ADVERSELY AFFECTING THE APPEAL OUTCOME. Amends. 6, 14; OK.Const.art. II, §§7, 20.

1. Of what legal right or privilege do you believe you were deprived in your case?

due process of law, effective appellate counsel. Amends. 6, 14.

2. In the facts of your case, what happened to deprive you of that legal right or privilege and who made the error of which you complain?

Appellate counsel visited with Petitioner twice via telephone concerning

direct appeal issues to be raised. Appellate counsel called (OVER)

3. List by name and citation any case or cases that are very close factually and legally to yours as examples of the error you believe occurred in your case.

Coddington V. State, 259 P.3d 833 (Okl.Cr.2011) holds that: "Ineffective

assistance of appellate counsel is an issue which can be raised for (OVER)

4. How do you think you could now prove the facts you have stated in answer to Question No. 2, above? Attach supporting documentation.

affidavit of Petitioner, evidentiary hearing with testimony of both Peti-

tioner and appellate counsel, as well as trial counsel.

5. If you did not timely appeal the original conviction, set forth facts showing how you were denied a direct appeal through no fault of your own.

N/A

6. Is this a proposition that could have been raised on Direct Appeal? Yes ( )     No (X)
Explain:   This ground resulted FROM direct appeal proceedings.

## PART C

I understand that I have an absolute right to appeal to the Court of Criminal Appeals from the trial court's order entered in this case, but unless I do so within thirty (30) days after the entry of the trial judge's order, I will have waived my right to appeal as provided by Section 1087 of Title 22.

## PART D

I have read the foregoing application and assignment(s) of error and hereby state under oath that there are no other grounds upon which I wish to attack the judgment and sentence under which I am presently convicted. I realize that I cannot later raise or assert

GROUND ONE-cont.......
2.) cont.......

Petitioner while he was at Lexington CC in approx. Nov. 2010. Petitioner called appellate counsel once from CCF located in Cushing, OK., in approx. January 2011. These verbal conversations were had about the issues to be raised on direct appeal, where Petitioner wished to have each of the issues raised herein raised in his direct appeal. (See attached Sworn Affidavit).

Petitioner also wrote Appellate Counsel (3) letters, specifically requesting that issues (2) -(5) be raised on direct appeal. (See attached copy of certified letter & counsel's response. (Attached Exhibit "B").

Despite all of Petitioner's pleas to counsel to raise these issues on direct appeal, the issues went ignored and were not raised.

[NOTE: Please incorporate the following grounds of error to this instant ground of error, to support Petitioner's ineffectiveness of appellate counsel argument.]

On the phone, appellate counsel seemed ONLY interested about talking concerning the grounds of error that were raised on direct appeal. She did NOT seem interested in talking about Petitioner's grounds of error, even though Petitioner's grounds were much "stronger" and persuasive than the ones that were raised.

Petitioner would have obtained a reversal for a new trial, had these much "stronger" grounds been raised on direct appeal.

Petitioner is now entitled to be heard on these grounds of error because he was denied a review of these grounds of error through no fault of his own. He is also entitled to an evidentiary hearing, as well as a new trial. Amends. 6, 14.

3.) Cont.......

the 1st time in a post-conviction action." See also, Brecheen V. Reynolds, 41 F.3d 1343, 1363-64 (C.A.10,OK.1994) & Smith V. State, 915 P.2d 927, 930 (Okl.Cr.1996).

The decision of Woodruff V. State, 910 P.2d 348 (Okl.Cr.1996) holds:
"Exception to rule that application of uniform post-conviction procedure Act is limited to claims which could NOT have been NOT have been raised on direct appeal exists when court finds ground for relief asserted which for sufficient reason was not asserted....."

Petitioner herein is properly before this Honorable Court in his post-conviction application, raising several grounds of error NOT raised on direct appeal due to the sufficient reason that (1) they are outside the record; and (2) appellate counsel refused/failed to investigate into & raise these much "stronger" grounds of error on direct appeal, through no fault of this Petitioner, where Petitioner tried to get her to raise the issues as mentioned above in No. (2). (See Petitioner's Sworn Affidavit).

Further, Castro V. State, 880 P.2d 387 (Okl.Cr.,1994) holds:
"If appellate counsel is found ineffective, doctrines of waiver & res judicata do NOT bar consideration of issues raised in post-conviction application."

GROUND ONE-cont........
No. 3.)-cont..........

The decision of Valdez V. State, 933 P.2d 931 (Okl.Cr.1997) holds:
"Otherwise procedurally barred claim for post-
conviction relief may be viewed on merits in
context of ineffective assistance of appel-
late counsel claim if claim is contained in
original, timely post-conviction application
& if the allegations, if true, constitute
denial of reasonably competent assistance of
appellate counsel under prevailing profess-
ional norms."

Petitioner maintains that the issues raised herein under the guise of
ineffective appellate counsel can NOT barred by the doctrines of waiver,
or res judicata, because Petitioner has been deprived of his constitutional
rights to have these issues heard by the ineffectiveness & incompetence of
appellate counsel as set forth herein.

It is well-settled that Petitioner is entitled to the effective assist-
ance of appellate counsel on direct appeal. Sellers V. State, 889 P.2d 895
(Okl.Cr.1995) holds:
"Appellate counsel's performance must meet
the 'reasonably effective assistance' stan-
dard of Strickland." See Strickland V.
Washington, 446 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984).

While it is true that appellate counsel is not required to raise every
nonfrivolous error on direct appeal, Gilbert V. State, 955 P.2d 727 (Okl.
Cr. 1998), appellate counsel IS ineffective if he/she fails to raise issues
which were "stronger" than those actually raised on direct appeal. See
Smith V. Robbins, 120 S.Ct. 746, 528 U.S. 259, 145 L.Ed.2d 756 (2000) which
holds:
"Appellate counsel may violate the 6th Amend-
ment if the failure to raise an issue was
'objectively unreasonable' & if there is a
'reasonable probability that, but for his
counsel's unreasonable failure' to raise
his claims, the defendant 'would have pre-
vailed on his appeal." 528 U.S. at 285-86.
Amends. 6, 14.

The claims raised in this post-conviction application are much "stronger"
than those raised on direct appeal & despite the fact they were "outside the
record," they were known to appellate counsel via telephone visits & letters
from Petitioner BEFORE said direct appeal was filed. (See Petitioner's Sworn
Affidavit attached).

The proposition raised on direct appeal was "weak" and only involved
Petitioner's sentence. NO issues were raised attacking the fundamentally
unfairness of Petitioner's trial, despite Petitioner's pleas to counsel to
raise these issues on direct appeal. Said proposition involving Petitioner's
sentence was obviously meritless as the OCCA denied relief on the issue.

The issues raised herein involve & affect the fundamental fairness of
the entire trial. The focus of appellate counsel, once these instant issues
were brought to light by Petitioner should have been on these much "stronger"
grounds, but they went ignored for no apparent reason to Petitioner. (See

(5)

GROUND ONE-cont......

3.) cont.......

    Wherefore, due to the facts, arguments & authorities as set forth herein, as well as a review of the issues raised herein, it is obviously clear that the outcome of Petitioner's direct appeal would have been different had these issues been timely raised herein.

    Therefore, Petitioner has now conclusively shown how appellate counsel's performance on direct appeal was incompetent, "objectively unreasonable", unprofessional & ineffective in violation of Petitioner's rights under the 6th Amendment, applicable to the states through the 14th Amendment due process clause. Had appellate counsel raised the issues below in Petitioner's direct appeal, the outcome thereof definitely would have been different, thus entitling Petitioner to now be heard on the issues' merits as a matter of due process. Amends. 6, 14. It is so PRAYED.

## GROUND NUMBER TWO

    TRIAL COUNSEL ACTED "OBJECTIVELY UNREASONABLE", UNPROFESSIONAL, INCOMPETENTLY & INEFFECTIVELY IN THIS CASE WHERE COUNSEL REFUSED TO ALLOW PETITIONER TO TESTIFY ON HIS BEHALF AFTER PETITIONER EXPRESSED HIS DESIRE TO TESTIFY. Amends. 6, 14; OK.Const.art.II, §§ 7, 20.

    (1) Of what legal right or privilege do you believe you were deprived of in your case?

    effective assistance of trial counsel, as well as fundamentally fair trial, and due process of law. Amend. 6, 14.

    (2) Before Petitioner's trial, trial counsel Ramey & Petitioner talked concerning Petitioner's potential testimony at trial. Petitioner expressed his desire to testify to the truth, to his innocence, to the jury. Petitioner wished to testify that he did NOT kidnap anyone. Petitioner would have testified that he caught his wife, Denna Laffoon, engaging in sex with his (Petitioner's) nephew, Blake Jones, which led to the charge of Assault & Battery. Petitioner could've testified to his only defense of "heat of passion." Petitioner would've testified that he did NOT commit the crimes of spousal rape or the A & B With Dangerous Weapon. Further, Petitioner would have testified that the only charge he was guilty of was Domestic A & B, after catching his wife having sex with his nephew as stated above.

    That, Petitioner told counsel that he wished to testify to the above facts to the jury. He just wanted to tell the truth. (See Petitioner's Sworn Affidavit attached).

    In response to Petitioner's wishes to testify, trial counsel fully agreed to allow him to testify well before trial began. But, however, at trial and just after the State's case ended, trial counsel met with Petitioner and his family in a room outside the courtroom. Counsel told Petitioner that he was NOT going to allow him to testify. (See Petitioner's Sworn Affidavit attached).

    Petitioner at this point, did NOT know know that the decision to testify was his and his alone, that counsel could not legally prevent him from doing so. (See attached sworn affidavit).

    Then, once said meeting was over and counsel & Petitioner entered back into the courtroom, counsel advised the Judge that Petitioner would not be testifying. At that point, the Judge pointed out to Petitioner that he did have a right to testify if he wished. Petitioner told him that he wished to testify but that his lawyer wouldn't let him. (See Petitioner's Sworn Affi-

GROUND TWO-cont........

No. 2.)-cont.........

davit attached).

After the Judge not responding to Petitioner's statements, the jury retired to deliberate as the defense called NO more witnesses in Petitioner's defense.

That, had Petitioner testified, the outcome of the trial would have been wholly different. Petitioner would not have been convicted on any of the charges, especially due to the defense of "heat of passion". Instead, because Petitioner was not allowed to testify on his own behalf, he was found guilty on all charges and sentenced to LIFE, 50 yrs, 75 yrs, and LIFE without Parole.

Wherefore, due to the "objectively unreasonable" conduct of defense counsel by refusing to allow Petitioner to testify to the jury, the fundamental fairness of the entire trial was compromised and adversely affected, warranting a new trial herein. It is so PRAYED.

No. 3.) Strickland V. Washington, supra, holds in pertinent part:

> "To succeed on a 6th Amendment claim of
> ineffective assistance of counsel, de-
> fendant must show that there is a 'reas-
> onable probability', which is a probab-
> ility sufficient to undermine confidence
> in the outcome of trial, that, but for
> counsels' unprofessional errors, result
> of the proceeding would have been differ-
> ent." Amend. 6.

See also, Marshall V. State, 232 P.3d 467 (Okl.Cr.2010).

As previously shown in question no. 2 above, Petitioner meets the burden of proof that counsel acted in an unprofessional, incompetent, ineffective and "objectively unreasonable" manner by refusing to allow Petitioner to testify to the jury, after he had requested to do so many times beforehand.

It is obviously clear that the outcome of the trial would have been different had Petitioner been allowed to testify. Therefore, Petitioner must succeed on his 6th Amendment claim herein, and be granted a new trial where Petitioner is able to testify on his own behalf.

That due to the fact that most of these conversations between counsel & Petitioner were "outside the trial record," that an evidentiary hearing is required pursuant to Title 22 O.S. §§ 1083(b), 1084. (See Petitioner's Sworn Affidavit attached hereto).

Furthermore, Petitioner has a fundamental right under the U.S. Constitution to testify on his own behalf. In the decision of In Re Oliver, 68 S.Ct. 499, 333 U.S. 257 (1948), the U.S. Supreme Court held:

> "A person's right to reasonable notice of
> a charge against him & an opportunity to
> be heard in his defense are basic, & such
> rights include, as a minimum, a right to
> examine witnesses against him, TO OFFER
> TESTIMONY, & to be represented by counsel.
> Amend. 14."

Further see, Cannon V. Mullin, 383 F.3d 1152 (C.A.10,OK.2004) which holds:

> "The decision whether to testify lies squarely
> with the defendant; it is NOT counsel's deci-
> sion."

Ground One-cont.......
3.)-cont.......

In this instant case, Petitioner expressed his desire to testify before & during trial to defense counsel, but counsel went outside his authority or duties, and deprived him of that constitutional right because counsel, along with the Court, did not want the trial to go another day and into the Memorial Day Weekend. (Refer to Ground Three herein).

Cannon, supra, further holds that:

> "Defense counsel should inform defendant that he has the right to testify & that the decision whether to testify belongs solely to him, discuss the strategic implications of choosing whether to testify, & should make a recommendation to the defendant."

In this instant case, until recently, Petitioner thought that the final decision of whether he should testify belonged to counsel because counsel never told Petitioner the decision was his but instead flat out told him that he wasn't going to testify. (See Petitioner's Sworn Affidavit attached).

Cannon, supra, further holds in pertinent part:

> "Defense counsel lacks authority to prevent a defendant from testifying in his own defense, even when doing so is suicidal trial strategy."

As stated above, counsel Ramey went outside his authority to deprive Petitioner of his constitutional right to testify. This "objectively unreasonable", incompetent, unprofessional, & ineffective act of counsel deprived Petitioner of his 6th & 14th Amendment rights, as well as deprived him of a fundamentally fair trial, because the only defense available to him which is "acting in the heat of passion," was NEVER presented to the jury, through no fault of the petitioner, thus adversely affecting the outcome of his trial.

Petitioner maintains that his trial counsel's ineffectiveness is being properly brought before this Honorable Court in this post-conviction application. In Massaro V. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690, 1694, 155 L.Ed. 2d 714, 720 (2003), the U.S. Supreme Court held:

> "An ineffective assistance of counsel claim may be brought in a collateral proceeding.....whether or not the Petitioner could have raised the claim on direct appeal."

See further, Mitchell V. State, 934 P.2d 346 (Okl.Cr.1997) where it was held:

> "Post-conviction ineffective assistance of counsel claims are properly before the OCCA only if they require fact-finding outside appellate record."

That, this ground of error requires fact-finding "outside" the record. Therefore, Petitioner is properly before this Honorable Court in his collateral/post-conviction proceeding as to his claims of ineffective appellate & trial counsel claims.

Wherefore, Petitioner has conclusively shown this Honorable Court that: (1) his ineffectiveness of counsel claims are properly before this post-conviction court; (2) trial counsel acted in an "objectively unreasonable", in-

GROUND TWO-cont........

3.)-cont......

competent, unprofessional & ineffective manner by refusing to allow Petitioner to testify, which was his wishes, and which would have exposed and presented the only defense he had to the charges, which was "heat of passion"; and (3) that the outcome of both direct appeal and the trial was adversely affected by counsel's ineffectiveness.

Therefore, for the reasons, arguments & authorities as set forth herein, Petitioner respectfully requests this Honorable Court to find that trial counsel's ineffectiveness before & during the trial deprived Petitioner of his fundamental & constitutional right to testify on his own behalf, thus amounting to a deprivation of a fundamentally fair trial and due process of law. Amends. 6, 14. It is so PRAYED.

4.) evidentiary hearing with live testimony from Petitioner, his mom, his dad, (Kathy & Franky Laffoon), Ladonna Dean (friend of the family), Leah Laffoon & Denise Laffoon (Petitioner's sisters) and Sierra Jones (Petitioner's niece); sworn affidavits from Petitioner and some of the above people

5.) N/A

6.) yes, however, due to appellate counsel's unreasonable ineffectiveness, these issues were never raised on direct appeal.

## GROUND THREE

TRIAL COUNSEL ACTED "OBJECTIVELY UNREASONABLE", UNPROFESSIONAL, INCOMPETENTLY & INEFFECTIVELY IN THIS CASE WHERE, AFTER REQUESTED BY PETITIONER, COUNSEL REFUSED TO OBJECT TO THE JUDGE'S IMPROPER COMMENTS TO THE JURY JUST BEFORE THEY WENT TO DELIBERATE, ADVERSELY AFFECTING THE TRIAL OUTCOME. Amends. 6, 14.

(1) Of what legal right or privilege do you believe you were deprived of in your case?

effective assistance of trial counsel, as well as a fundamentally fair trial, and due process of law. Amends. 6, 14.

(2) During Petitioner's trial, just before the jury was to retire for deliberations, Judge Shepherd made the following improper comments to the jury:

> "If you all want to enjoy your Memorial Day
> weekend, you had better come back with
> a guilty verdict."

(See attached sworn affidavits from Petitioner, his mother Kathy, his father Franky, family friend Ladonna Dean, Petitioner's sister Leah and his niece Sierra Jones.)

Then, Petitioner told counsel to object to said comments, but counsel failed to object because he was only interested in going home for Memorial Day weekend, like the jury & Judge were. That, had counsel timely & properly objected, Petitioner's trial would have been subject to a mistrial, and the outcome thereof would have been different, than just a guilty verdict returned on Petitioner in less than (45) minutes. Petitioner is entitled to a new trial. It is so PRAYED.

(3) Petitioner incorporates all of the cases cited in ground two to this ground of error, as well as the following authorities:

GROUND THREE-cont......

3.)-cont......

First of all, trial judges are presumed to know the law & apply it in making their decisions. Walton V. Arizona, 110 S.Ct. 3047, 497 U.S. 639, 111 L.Ed.2d 511 (1990).

Under the 6th and 14th Amendments to the U.S. Constitution, Petitioner has a constitutional right to an impartial trial with an impartial jury. See OK.Const.art.II, §19. See also, Duncan V. Louisiana, 391 U.S. 145, 149, 88 S.Ct. 1444 (1968) which holds:

> "Defendant has a due process right under 6th and 14th Amendments to a fair and impartial trial by jury."

That, in this case, Petitioner has been deprived of an impartial trial with an impartial jury due to the "coerciveness" of the trial court judge's improper comment to the jury just before they retired to deliberate:

> "If you all want to enjoy your Memorial Day weekend, you had better come back with a guilty verdict."

The decision in Jenkins V. U.S., 85 S.Ct. 1059, 380 U.S. 445 (1965) is very similar to this instant case, holding in pertinent part:

> "In its context & under all the circum- stances of criminal case, trial jduge's statement, in course of his response to jury's note of their inability to agree on verdict, that **You got to reach a decision in this case**' was coercive."

In Jenkins, the trial court was forcing the jury to reach a decision, one way or the other. In this instant case, the trial court was forcing the jury to make a decision that Petitioner was guilty, so they could enjoy their Day weekend. The Court's comments in this instant case are even more severe, prejudicial and coercive than in the Jenkins case. Thus requiring reversal for a new trial herein.

Lastly, it is clear in this case that the trial judge was **biased** against Petitioner from his improper and coercive comments to the jury. This action by the court violated the principles set forth in Bracy V. Gramley, 520 U.S. 899, 117 S.Ct. 1793, 138 L.Ed.2d 104 (1997) which held:

> "Due process clause requires 'a fair trial in a fair tribunal' before a judge with NO actual bias against the defendant."

Wherefore, for the reasons, arguments & authorities as set forth herein, Petitioner respectfully requests this Honorable Court to REVERSE the con- viction had herein, which was obviously "coerced" by the trial court, as described herein, and because Petitioner was deprived of a fundamentally fair trial, as a matter of due process.

Now, trial counsel acted unprofessionally, incompetently, ineffectively and in an "objectively unreasonable" manner when he failed to timely and properly object to said improper and "coercive" comments to the jury by the judge. Said ineffectiveness adversely affected the outcome of trial, thus mandating and requiring a new trial herein, as a matter of due process. See, Strickland, supra. It is so PRAYED.

(4) evidentiary hearing with live testimony from Petitioner, his mom & dad (Kathy & Franky Laffoon), Ladonna Dean (friend of the family), Leah and Denise Laffoon (Petitioner's sisters), and Sierra Jones (Petitioner's niece); sworn affidavits from Petitioner and some of these above people-attached. Also, the live testimony of Judge Shepherd.

Count Three-cont.........

(5.) N/A

(6.) Yes, however, due to appellate counsel's unreasonable ineffectiveness, these issues were never rasied on direct appeal.

## GROUND FOUR

USE OF PRIOR TESTIMONY FROM MILISSA McKINNEY, AFTER DEFENDANT HAD BEEN PREVIOUSLY ACQUITTED AT SUBSEQUENT TRIAL, OF SIMILAR CRIMES, VIOLATED PETITIONER'S RIGHTS AGAINST DOUBLE JEOPARDY, WHERE JUDGE FAILED TO GIVE LIMITING INSTRUCTIONS & NEVER TOLD JURY OF PRIOR ACQUITTAL. Amends. 5, 6, 14.

1.) Of what legal right or privilege do you believe you were deprived in your case?
right prohibiting double jeopardy, right to fundamentally fair trial, and ineffectiveness of trial counsel & appellate counsel. Amends. 5,6,14.

2.) In the facts of your case, what happened to deprive you of that legal right or privilege and who made the error of which you complain?
Back on July 21, 2006, Petitioner was found NOT guilty (acquitted) on several counts in case no. CF-2005-351. These counts included Count (3), Maiming, against Petitioner's common-law wife Milissa McKinney, which Petitioner was found NOT guilty (acquitted) by a jury.

Then, on approx. May 26-27, 2011, a jury trial was held in this instant case, no. CF-2010-153. In said case, Petitioner was charged with multiple counts, including Domestic A & B, A & B With a Dangerous Weapon, Kidnapping, & Rape of Spouse, against his wife, Mrs. Denna Laffoon. Petitioner was found guilty by jury & was sentenced on May 27, 2011 to LIFE, (50) years, (75) years, and LIFE without Parole.

That, some of the acts alleged against Petitioner and tried by jury in case no. CF-2005-351 in 2006 were very similar to the acts alleged against Petitioner in this instant case on 2010. Because of this, the State used Ms. McKinney's previous testimony in this subsequent unrelated trial, in order to show Petitioner is guilty of the similar charges in said subsequent trial. Ms. McKinney's testimony was in great length & detail (for over 2 hours) as to the facts & events during the 2006 trial, of which Petitioner was acquitted.

That, before, during & after Ms. McKinney's testimony, nobody, including the Court, the State, nor Petitioner's counsel, ever pointed out the fact that Petitioner was found NOT guilty of most of the charges in the 2006 trial. Furthermore, nobody, including the Court, the State, nor trial counsel ever requested nor gave "limiting" instructions as to Ms. McKinney's testimony.

That, due to the great length & detail of Ms. McKinney's testimony as to the 2006 charges, in this unrelated subsequent trial of very similar charges, Petitioner's rights against or prohibiting double jeopardy were violated, under the 5th Amendment to the U.S. Constitution. Furthermore, Petitioner's rights to due process & a fundamentally fair trial/sentencing process, were violated by this very prejudicial testimony. Amends. 5,6,14.

That, Petitioner was deprived of a fundamentally fair trial, as a matter of due process of law, where McKinney's testimony that Petitioner had committed similar crimes or equally heinous crimes prompted a more ready belief by the jury that he had committed the ones with which he was on trial in this subsequent case. The jury's minds were predisposed to believe Petitioner guilty on this subsequent case by McKinney's testimony as to a prior unrelated trial.

Count Four-cont........

2.) cont........

    Compounding this harmful & prejudicial error to Petitioner was the fact that trial counsel never objected to this prejudicial testimony on these grounds. Plus, nobody ever requested nor gave "limiting" instructions as to McKinney's testimony, including trial counsel, the State, nor the Court.

    Therefore, due to the harmful & prejudicial nature of McKinney's testimony as set forth herein, compounded with the fact that nobody let the jury know that Petitioner was acquitted on most of these prior charges in 2006, and compounded with the fact that NO "limiting" instructions were gievn as to McKinney's testimony, a new trial is warranted herein, as a matter of due process of law. Amends. 5,6,14.

    It is so PRAYED.

3.) List by name & citation any cases that are very close factually & legally to yours as examples of the error you believe occurred in your case.

    In the U.S. Supreme Court decision of <u>Dowling V. U.S.</u>, 110 S.Ct. 668, 493 U.S. 342, 107 L.Ed.2d 708 (1990), it was held:

> "Use of prior testimony, after Defendant had been previously acquitted, of witness at subsequent trial did not violate double jeopardy or collateral estoppel, where judge gives limiting instructions & twice told jury of prior acquittal."

    In this instant case, as mentioned in No. (2) above, the use of prior testimony of Ms. McKinney in a 2006 jury trial at Petitioner's jury trial of 2010, where Petitioner was acquitted on most of the charges in 2006, violated double jeopardy, because no "limiting" instructions were given as to McKinney's testimony, nor was the fact that Petitioner was acquitted on most of the 2006 charges ever mentioned to the jury by anyone, including the court, the State, nor Petitioner's trial counsel.

    That, due to these facts, compounded with the great length & detailed testimony by McKinney, violated double jeopardy in this case, requiring a new trial.

    Furthermore, in <u>Roulston V. State,</u> 307 P.2d 861, 871 (Okl.Cr.1957) the OK Court of Criminal Appeals held:

> "Evidence that the defendant has committed a similar crime or one equally heinous will frequently prompt a more ready belief by the jury that he might have committed the one with which he is being charged; thereby predisposing the mind of the juror to believe the prisoner guilty.
>
>     Generally, therefore, it is HARMFUL ERROR to admit evidence of other or collateral crimes independent of & unconnected with the crime for which the defendant is on trial."

    That, because the crimes of which McKinney was testifying to in the 2006 trial were very similar & equally heinous to the crimes Petitioner was charged with in his 2010 trial, the jury had a more ready belief that he had committed the ones with which is was on trial for. The jury was predisposed to believe Petitioner guilty.

    That, Petitioner maintains that the harfulness & prejudicial nature of McKinney's testimony in this case, violated his rights to double jeopardy as well as deprived Petitioner of a fundamentally fair trial, as a matter of

<u>Count Four-cont.......</u>

<u>No. 3......</u>

due process of law, warranting a new trial.

Furthermore, not only was Petitioner's guilt/innocence phase of trial prejudicially affected by McKinney's testimony, so was the sentencing phase of Petitioner's trial.

In the decision of <u>Lowery V. State,</u> 192 P.3d 1264, 1273 (Okl.Cr.2008), the OCCA held in pertinent part:

> "Evidence of other crimes may be harmless
> as to findings of guilt <u>BUT</u> prejudicial
> as to sentencing, & sentences modified
> accordingly.

That, in this case, the evidence of other crimes are HARMFUL and prejudicial to Petitioner. In the event this Honorable Court finds that the evidence was harmless in the guilt/innocence phase of trial, Petitioner respectfully requests that his sentences be modified accordingly, to also run concurrently instead of consecutively. It is so PRAYED.

4.) affidavit of Petitioner; testimony of Ms. McKinney at prior & subsequent trials of Petitioner; Verdict in CF-2005-351 marked as Exhibit "A" attached hereto;

5.) N/A

6.) Yes, counsel raised a similar proposition in direct appeal, but the issue of double jeopardy & use of "acquitted" verdict, etc., as set forth herein, was NOT raised therein, despite Petitioner requesting such to be raised.

## GROUND FIVE

TRIAL COUNSEL WAS "OBJECTIVELY UNREASONABLE" AND INEFFECTIVE, ADVERSELY AFFECTING THE OUTCOME OF PETITIONER'S TRIAL BECAUSE HE REFUSED/FAILED TO TIMELY AND PROPERLY OBJECT TO WITNESS McKINNEY'S PRIOR TESTIMONY ON THE GROUNDS OF DOUBLE JEOPARDY, ETC.. Amends. 5,6,14.

1.) Of what legal right or privilege do you believe you were deprived of in your case? effective assistance of counsel, as well as a fundamentally fair trial, and due process of law. Amends. 5, 6, 14.

2.) The relevant facts are:

The facts surrounding McKinney's testimony at a prior trial in 2006, being used in Petitioner's subsequent trial in 2010 are more fully set forth in Ground 4 herein.

However, Petitioner now wishes to set forth that before & during McKinney's testimony in 2010, Petitioner continuously asked his trial counsel, Mr. Jay Ramey, to OBJECT on the grounds of double jeopardy & prejudice.(See Petitioner's attached Sworn Affidavit.)

Several times, Petitioner was waved off by Ramey and a few times Ramey told Petitioner that her testimony was <u>NOT</u> double jeopardy. Nevertheless, NO objection was given on these grounds and facts, through no fault of this Petitioner.

That, had a proper, specific, & timely objection been entered into by defense counsel, at Petitioner's 2010 trial, the Court would have disallowed McKinney's testimony on double jeopardy grounds. Thus, trial was adversely & prejudicially affected by counsel's failure to enter a timely objection on these grounds. This warrants a new trial, withOUT McKinney's prejudicial tes-

Count Five-cont.........

2.)-cont.......

timony.

3.) List by name & citation any cases that are very close factually & legally to yours as examples of the error you believe occurred in your case.

In Strickland V. Washington, supra, the U.S. Supreme Court held in pertinent part:

> "To succeed on a 6th Amendment claim of
> ineffective assistance of counsel, de-
> fendant must show that there is a 'reas-
> onable probability', which is a probab-
> ility sufficient to undermine confidence
> in the outcome of trial, that, but for
> counsel's unprofessional errors, result
> of the proceeding would have been differ-
> ent." Amend. 6.

See also, Marshall V. State, 232 P.3d 467 (Okl.Cr.2010).

As previously shown in question No. (2) above, Petitioner meets the burden of proof that trial counsel acted in an "objectively unreasonable", incompetent, unprofessional & ineffective manner by failing/refusing to properly, specifically & timely Objecting to the use of witness McKinney's testimony on the grounds of double jeopardy, which adversely affected the outcome of Petitioner's trial, where said testimony of unrelated, very similar prior acts, of which Petitioner was acquitted, prejudicially affected the outcome of his 2010 trial.

That, coupled with there were NO "limiting" instructions given by the Court, nor requested by the State or defense counsel, and coupled with the fact that nobody advised the jury that Petitioner was previously "acquitted" of most of the charges to which McKinney was testifying to, Petitioner was deprived of a fundamentally fair  trial, as a matter of due process of law. Amends. 5,6,14.

[NOTE: Petitioner respectfully requests this Honorable Court to incorporate the information & decisions of the previous counts herein to show how counsel was ineffective and how said ineffectiveness adversely affected the outcome of his 2010 trial.]

Wherefore, for the foregoing reasons, arguments & authorities as set forth herein, Petitioner respectfully requests this Honorable Court to GRANT post-conviction relief as requested herein, and to GRANT Petitioner a new trial.  It is so PRAYED.

4.) trial court record; Petitioner's sworn affidavit attached hereto

5.) N/A

6.) yes, appellate counsel could have raised this issue on direct appeal in connection with Proposition One raised herein, but through no fault of Petitioner, said ground of error was not raised & must be decided on its merits herein.

## GROUND SIX

EVIDENCE IS INSUFFICIENT TO SUSTAIN A GUILTY VERDICT ON COUNT 4, 1st DEGREE RAPE OF SPOUSE, IN VIOLATION OF THE 14TH AMENDMENT DUE PROCESS CLAUSE. Amend. 14.

1.) Of what legal right or privilege do you believe you were deprived in your case.

The right to have sufficient evidence presented by the State to support a finding of guilt on Count 4, as a matter of due process of law. Amend. 14.

2.) In this instant case, Petitioner was tried by jury on approx. May 26-27, 2011 on Count 4, the charge of 1st Degree Rape of Spouse,in violation of Title 21 O.S. §1111. The main victim/witness to the charge was Petitioner's wife, Denna Laffoon, who testified that Petitioner had a dream that she had been sleeping with his nephew. That, in response to said dream, Petitioner did not wish to have sex with her anymore. That, in response to said dream, Petitioner attacked and raped her anally or committed anal sodomy with her.

On cross-examination, defense counsel questioned Mrs. Laffoon as to whether she had been to the doctor or had doctor's reports to support her allegations? She answered, "Yes." Counsel then asked her where the reports were, etc.? In response, she answered saying she didn't know. Counsel then discredited her by presenting the fact to the jury that her claims of having to have been to the doctor & having doctor's reports, that there was NO testimony of a doctor nor any doctor's reports presented as evidence in the trial.

When on February 2, 2010, victim wife, Mrs. Merryman, went to the hospital for treatment of her injuries, including a hairline fracture on her cheekbone, major bruising on her body, bite marks, & a stab wound, and a no longer functioning left kidney, surely the State would have presented the doctor she saw and presented doctor's reports as to the injuries sustained. But neither were had as evidence as she had claimed.

Furthermore, Mrs. Merryman testified that although Petitioner's penis was small, the [anal] experience hurt & that she felt tearing. (Tr.I, 297-298). Surely just a couple days after said assault & rape had allegedly occurred, a rape kit or exam would show said "tears" and wounds, as she claims and alleges against Petitioner. Surely the State would present said evidence if it were available. None was ever presented as evidence which greatly discredits Mrs. Merryman's testimony.

Now, these above discrediting facts, coupled with the fact that a previous mistrial had already been granted in this case due to the fact that during recess of jury selection, one of the potential jurors overheard Mrs. Merryman (Laffoon), Ms. McKinney, and Mrs. Frye talking about contemplating what they were going to do to Petitioner and how much time was going to get. They were also making sure that their stories matched up, greatly discredits Mrs. Merryman's (Laffoon's) testimony.

[NOTE: Throughout the trial, the Prosecution referred to Mrs. Laffoon, using her maiden name of Mrs. Merryman, in an attempt to show the jury that she was not married to Petitioner., when in fact they were legally married. See, attached "Exhibit "C".]

That, it is Petitioner's position that because Mrs. Laffoon's testimony had been greatly discredited, impeached, etc., with this line of questioning, that corroborative evidence is required to support a conviction in this case. That, because there is no corroboration of her testimony, insufficient evidence exists to support the conviction in Count 4.

Wherefore, for the reasons, arguments & authorities as set forth herein, Petitioner respectfully requests this Honorable Court to REVERSE & DISMISS

COUNT SIX-cont........

No. 2.)-cont........

Count 4 with prejudice to the State. It is so PRAYED.

3.) List by name & citation any cases that are very close factually & legally to yours as examples of the error you believe occurred in your case.

In the U.S. Supreme Court decision of <u>Jackson V. Virginia,</u> 99 S.Ct. 2781, 443 U.S. 307, 61 L.Ed.2d 560 (1979), it was held in part:

> "Due process requires that no person be made
> to suffer the onus of a criminal conviction
> except upon sufficient proof defined as evi-
> dence necessary to convince a trier of fact
> beyond reasonable doubt of the existence of
> every element of the offense. Amend. 14."

In this instant case, it is Petitioner's position that the victim's testimony was so impeached, inherently improbable, contradictory and unreasonable, that it required corroborative evidence in order to support a finding of guilt. <u>Martinez V. State,</u> 569 P.2d 497 (Okl.Cr.1977). See further <u>Capps V. State,</u> 674 P.2d 554 (Okl.Cr.1984), which states:

> "Where testimony of victim is contradictory,
> uncertain, improbable, or impeached, it
> should be corroborated to warrant convic-
> tion of rape."

In this case, the victim, Petitioner's wife, Mrs. Laffoon, lied several times while on the stand. She said that Petitioner had bit her, despite it was proved that the bite marks did <u>NOT</u> match. (See Exhibit "C" ). She said that she didn't know witness Ladonna Dean, when in fact Ladonna is a long time friend of the family & was at the victim's wedding to Petitioner. (See Petitioner's Sworn Affidavit). Mrs. Laffoon was caught by a jury member outside the courtroom and in the hallway conspiring with Ms. KcKinney & Mrs. Frye, contemplating about what they were going to testify about concerning Petitioner and making sure their stories matched up. This warranted a mistrial in this case.

That, these numerous inconsistencies, contradictions in the victim's testimony, along with the impeachment of victim, required corroboration according to <u>Martinez</u> and <u>Capps</u>, supra. That, because there was absolutely NO corroboration, of which the victim claimed that she had seen a doctor & doctor's reports existed (but were never presented at trial or given to Petitioner or his counsel), Count 4 must be dismissed with prejudice to the State.

That, in <u>Burks V. U.S.,</u> 437 U.S. 1, 18, 98 S.Ct. 2141, 2150-2151, 57 L.Ed. 2d 1, 14 (1978), it was held in pertinent part:

> "The double jeopardy clause requires a judg-
> ment of acquittal if a court finds the evi-
> dence is legally <u>insufficient</u>."

Therefore, it is Petitioner's position that Count 4, 1st Degree Rape of Spouse, should be dismissed based on insufficient evidence because NO corroboration was given as required as to the victim's seriously impeached, contradictory, and uncertain testimony herein. It is so PRAYED.

any reason or ground known to me at this time or which could have been discovered by me by the exercise of reasonable diligence. I further realize that

I am not entitled to file a second or subsequent application for post-conviction relief based upon facts within my knowledge or which I could discover with reasonable diligence at this time.

PART E

I hereby apply to have counsel appointed to represent me. I believe I am entitled to relief. I do not possess any money or property except the following: (If none, state "None"). _____ "NONE" _____

_____

3 24 14
Date

Signature
William F. Laffoon, #256288
CCF   (B-N-147)
3200 S. Kings Kwy.
Cushing, OK.   74023

(Pro Se Petitioner)

State of Oklahoma,          )
                           ) ss
County of   Payne          )

I, William Laffoon _____, being first sworn under oath, states that he signed the above application and that the statements therein are true to the best of his knowledge and belief.

_____
Signature  William Laffoon

Subscribed and sworn to before me this 24th day of ___March___, 2014.

My Commission Expires: ___10-23-15___   Kristi A Murrett
                                        Notary Public

KRISTI A. MURRETT
NOTARY
# 03013057
EXP. 10/23/15
STATE OF OKLAHOMA
PUBLIC

(17)

STATE OF OKLAHOMA   )
                    )  ss.
COUNTY OF _PAYNE_   )

## SWORN AFFIDAVIT

I, ___William Laffoon___ the affiant, do solemnly swear on my oath that I give this Sworn Statement of my own free will, and I, being of sound mind, do state to-wit:

I,_William Laffoon_ , am the defendant/petitioner in case no. CF-2010-153, which arises out of Wagoner County, OK..

That, before my direct appeal was filed, I spoke with my appellate atty on the phone concerning the issues I felt needed to be filed on appeal. That, in addition to these phone calls, I wrote (3) letters to appellate counsel requesting several issues, most of which are raised in my post-conviction application, be raised in my appeal.

That, one of the most important issues I wanted raised is the fact that I told trial counsel I wanted to testify. Wanted to tell the jury the truth. At 1st, counsel agreed to allow me to testify. But in meeting just after the State's case ended, and my witnesses were through testifying, with myself, my trial counsel Ramey, my 2 sisters, Leah & Denise, my mom & dad, Kathy & Franky Laffoon, and my niece, Sierra Jones, in a courthouse room, counsel told me that he wasn't going to allow me to testify. At that point, I did not know that the ultimate decision was mine. In open court, I told the Judge I wished to testify but that counsel didn't want me to.

That, if I could have testified to the jury, I would've testified to the fact that I did NOT kidnap anyone, let alone my wife. I would've testified that I had caught my wife, Denna, having sex with my nephew, Blake Jones, which put me in a rage which led to the charge of Assault & Battery. I could have testified that I acted in the "heat of passion." I would've testified that I did not rape my wife nor did I have anal sex with her. I would have testified that I ~~didn't commit~~ the crime of A & B with a Dangerous Weapon. But I would've testified that I was guilty of only A & B as a result of catching my wife having sex with my nephew. I feel this testimony would have changed the outcome of my trial, where I would've been ~~found guilty~~ on all counts but the A & B. My sentences wouldn't have been as severe either.

That, just before the jury was about to retire for deliberations in my case, Judge Shepherd told them that if they wanted to enjoy their Memorial Day weekend, they had better come back with a guilty verdict. I immediately asked counsel Ramey to object or say something but he was only worried about going home for the Memorial Day weekend as well.

That, I was acquitted on most of the charges Ms. McKinney testified to at my 2011 trial, said charges stemmed from a 2006 trial. That, several times I asked trial counsel to object to McKinney's testimony based on the fact that I was acquitted, but counsel waved me off, never objected, and never even requested "limiting" instructions as far as I know.

That, my wife, Denna, testified that she didn't know who Ms. Ladonna Dean was & that she had never met her before, when in fact Ladonna was a

(A)

good friend of the family & was present at our wedding on Nov. 24, 2009. In fact, Ladonna was a witness to the wedding and her name is on their Marriage License. My wife knew Ladonna pretty well. That, my wife also got caught conspiring with Mrs. McKinney and Mrs. Frye out in the hallway of the courtroom by a juror member, making sure their stories were straight and talking about what they had plans for me, which led to the 1st mistrial in this case. That, throughout the case & my trial, my wife, Denna, claimed that she had seen a doctor and that doctor's reports existed. But NO doctor's testimony or reports were ever given to me, my atty or introduced into evidence at my trial. She lied continuously throughout my trial.

Anything further affiant sayeth not.

### DECLARATION UNDER PERJURY

I state under penalty of perjury under the laws of Oklahoma that the foregoing is true & correct. Title 12 O.S.Supp.2004, §426. Executed at the CCF, 3200 S. Kings Hwy, Cushing, OK. 74023, on the 1ST day of April, 2014.

William Laffoon
Print Affiant's Name

Affiant's Signature

(B)

EXHIBIT A Pg 1 of 2

# IN THE DISTRICT COURT OF WAGONER COUNTY
## STATE OF OKLAHOMA

FILED
2006 JUL 21  PM 12: 37

| | |
|---|---|
| STATE OF OKLAHOMA, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CASE NO. CF-~~2003~~-351 |
| | ) 2005- |
| WILLIAM FRANKLIN LAFFOON, | ) |
| Defendant. | ) |

## VERDICT

### COUNT 1 – Assault and Battery – Domestic Abuse In Presence of Minor

We, the jury, empaneled and sworn in the above-entitled cause, do, upon our oaths, find as follows:

Defendant is:

_____X_____ Guilty.

_____ Not Guilty.

### COUNT 2 – Domestic Assault and Battery by Strangulation

Defendant is:

_____ Guilty.

_____X_____ Not Guilty.

### COUNT 3 – Maiming

Defendant is:

_____ Guilty.

_____X_____ Not Guilty.

_____
FOREPERSON

EXHIBIT "A"

Appealant Counsel          EXHIBIT "B"          ! Certification #
Attorney At LAW                                 7010 1060 0002 43814421

Ricki Walterscheid     2-2-12 Return Receipt Requested

Please supplement these facts to your Breif.
This is the third letter I have written you Ms Waltersched
Asking you to use this ground" Wher the Assistent District
Attorney Shawn Hughs talked About" And showed picturs of a
Bite Mark in Regard's to a Maiming charge I was found Not
guilty on in 2006 Case # CF-2005-351. This was Highly
prejudicial When Mentioned in My 2010 Jury Trial
Case # CF-2010-153 See Exhibit A, If I Had Access to My
Transcripts Exhibit B. Would Be Frankie Laffoon's Testimony
When He said" William was found Not gulty on that Maiming
Charge Because the dental impressions did not Match His
Teeth. (All THE ABOVE STYLED PROCEEDINGS TOOK PLACE IN WAGONER COUNTY
    Ricki Walterscheid, will you please, write Me Back,
And tell Me the Transcript pg #'s of Frankie Laffoon's Testimony!
IN WAgoner county's Jury Trial CF-2010-153


                    Certified Letter

                    Respectfully Submitted
                         By,
                    William J. Laffoon


STATE OF OKLAHOMA)
                  ) SS.     ACKNOWLEGMENT
COUNTY OF PAYNE   )


  BEFORE ME A NOTARY PUBLIC IN AND FOR THE STATE OF
OKLAHOMA ON THIS 7TH DAY OF FEBUARY 2012 PERSONALLY
CAME BEFORE ME WILLIAM F. LAFFOON KNOWN TO ME AND BY
ME HAVING BEEN FIRST DULY SWORN AND PLACED UPON HIS
OATH THAT HE HAS READ AND UNERSTOOD THE ABOVE AND FORGOING
THE SAME IS TRUE AND CORRECT AND HE HAS SIGHNED SAME
OF HIS VOLUNTARY FREE WILL, ACT AND DEED. FURTHER HE SAID
NOT.
                    1 of 2



JOE P. ROBERTSON
EXECUTIVE DIRECTOR

MARY FALLIN
GOVERNOR

STATE OF OKLAHOMA
## OKLAHOMA INDIGENT DEFENSE SYSTEM

February 14, 2011

**Ms. Ricki J. Walterscheid**
**Appellate Defense Counsel**

Mr. William Franklin Laffoon
Inmate No. 256288
Cimarron Correctional Facility
3200 S Kings Highway
Cushing, OK  74023

## ATTORNEY CLIENT COMMUNICATIONS – PRIVILEGED AND CONFIDENTIAL

Dear Mr. Laffoon:

In reviewing your letters, it has become clear that there are a few things that I need to clarify for you.

First, with regard to the use of prior convictions to enhance the range of potential punishment, the law is that a prior conviction may not be used if the sentence has expired ten years prior to the date of the newly charged offense. Put another way, the way in which the statute reads, "every person who, having been convicted of any offense punishable by imprisonment in the State Penitentiary, commits any crime after such conviction, within ten (10) years of the date following the completion of the execution of the sentence, and against whom the District Attorney seeks to enhance punishment pursuant to this section of law...." Okla.Stat.tit. 21, § 51.1 (2002 Supp). I am including a copy of the statute.  Unfortunately, none of your prior convictions were old enough to be challenged as "stale" for the purpose of the State using them to bump-up the potential range of punishment. You would have to discharge all prior sentences and have ten good, clean years without another felony conviction before we could complain about the State using your priors to give you more time.  I have included copies of the Judgment and Sentences that were used by the State and provided to the jury during the second stage of your trial as proof of your prior convictions.

Included with this letter you will find your father's testimony where he testified that it was his understanding that the bite marks on Milissa McKinney did not match the impressions taken of your teeth. It's a very brief exchange at the bottom of page 841 and top of page 842. I am also including an excerpt from the testimony of Bob Haley, whom the State called as a rebuttal witness, as well as the letter/exhibit that is referenced in his testimony.

I understand your frustration and confusion as to why the testimony of Milissa McKinney was allowed to come in with respect to these prior acts for which you were not convicted. However, the fact that you were found "not guilty" of these charges at a previous trail does not matter for the purpose that the State sought, and was allowed, to introduce the evidence during the trial of CF-

GENERAL APPEALS DIVISION • P.O. BOX 926 • NORMAN, OK 73070 • (405) 801-2727 • FAX  (405) 801-2758

(page 2)

2010-153.  The fact that you were found not guilty by the jury in CF-2005-351 means that the State cannot try you again for those charges.  Unfortunately, that does not mean that they cannot present Ms. McKinney as a witness to testify about the prior alleged events.  This is because the burden of proof for the purposes of evidence and testimony the State seeks to introduce via Oklahoma Statutes title 12, § 2404(B) (2001) is only that of "clear and convincing" evidence.  *See Burks v. State*, 594 P.2d 771, 775 (Okl.Cr. 1979).  "Clear and convincing evidence" is a lesser standard than "beyond a reasonable doubt."  Had your attorney used the verdict forms to further impeach the testimony of Ms. McKinney, that would have been great but it would not have stopped her testimony from being presented to the jury, and, as it was, when she was impeached with her prior inconsistent statements, she testified that she had lied a number of times before as to what happened to her and who had inflicted the injuries upon her.  That affects her credibility and whether the jury chooses to believe her, but it does not affect the State's ability to seek to present her testimony.

Do I think that the law with respect to that sort of evidence is "right"?  No, not at all.  I think it is wrong and unfair, but that is how the Court is treating and interpreting it right now.  But, there are other considerations the trial court is supposed to take into consideration when allowing that sort of testimony to come in - - that is what we attacked in our brief.

Currently, the State's brief is due on February 20th.  Given the trend I am seeing in other cases, I am guessing that they will be asking for more time.  As soon as the Brief of Appellee is received, a copy will be put in the mail to you.

Sincerely,

Ricki J. Walterscheid
Appellate Defense Counsel

enclosures:
Okla. Stat. tit. 21, §51.1 (2002 Supp.); State's Exhibits 600, 700, 800, 900, 28A; excerpts of testimony from Frankie Laffoon and Bob Haley; State's Exhibit 201; Okla. Stat. tit. 12, §2404 (2001); *Burks v. State*, 594 P.2d 771 (Okl.Cr. 1979).

# BRYAN CHRZ, D.D.S., D-ABFO
505 14TH Street
Perry, Oklahoma 73077

Bob Haley, Investigator
Wagoner County Sheriff's Office
307 East Cherokee
Wagoner, OK 74467

RE: Melissa McKinney Case

Mr. Haley,

I received by mail a CD with nine digital images of Ms. McKinney and her injuries. The package also had a letter of introduction to the case and maxillary and mandibular casts of the teeth of William Laffoon. Upon unpacking the package it was noted that the maxillary left lateral incisor had been broken from the maxillary cast and the maxillary left central incisor had been chipped. I used cyanoacrylate cement to replace the lateral incisor and include all chipped stone material in a small plastic box for any later reconstruction of the chipped central incisor.

I then reviewed the images on the CD. The patterned images were very suggestive of human bitemarks. The problem I ran into in this case was the fact all close up pictures of the wounds were out of focus. One image of the victim's back showed a patterned injury partially covered by a back strap of the victim's bra. The images of the leg injuries were of better quality but taken without a scale in place and with no close up shots. I would then have to state that even though there are patterned injuries appearing to be human bitemarks I have insufficient evidence to warrant a bitemark analysis.

Thank you for allowing me to review this case. If there is anything I can help you with in the future do not hesitate to contact me. If in the future you find a possible bitemark case I would be glad to review the things necessary for a complete bitemark analysis. The American Board of Forensic Odontology has a website www.abfo.org that holds the ABFO guidelines for bitemark analysis that I use in all cases. You can use that for a reference any time.

Respectfully,

*Bryan Chrz DDS*

Bryan Chrz, D.D.S., D-ABFO

(1)        EXHIBIT "C"

WAGONER COUNTY; STATE OF OKLAHOMA v. WILLIAM FRANKLIN LAFFOON; NO. CF-2010-153
JURY TRIAL PROCEEDINGS, VOLUME III OF IV; MAY 27, 2011

Page 841

1  Q.  Okay.  And she would leave and be with Wil?

2  A.  No.

3  Q.  So who was she with?

4  A.  Different guys.

5  Q.  Okay.  So you're saying someone else inflicted these

6      injuries on her?

7  A.  To the best of my knowledge.

8  Q.  So you really don't know -- you don't know that your

9      son inflicted these injuries?

10 A.  I don't know.

11 Q.  But you are aware that your son was home when the

12     police came out on September 26, 2005?

13 A.  Years ago, no, I don't recall.

14 Q.  Okay.  And you're aware that Milissa was home on

15     that weekend, September 26, 2005, and that you were

16     home when the police came out?

17         You remember the police coming?  You've already

18     said that.

19 A.  Yes.

20 Q.  Okay.

21 A.  Okay.

22 Q.  Have you ever seen this injury on Milissa?

23 A.  No.  I've never seen it.

24 Q.  Do you know what it's from?

25 A.  No.

DISTRICT COURT OF OKLAHOMA - OFFICIAL TRANSCRIPT
CERTIFIED COPY

WAGONER COUNTY: STATE OF OKLAHOMA v. WILLIAM FRANKLIN LAFFOON; NO. CF-2010-153
JURY TRIAL PROCEEDINGS, VOLUME III OF IV; MAY 27, 2011

Page 842

1  Q.  Do you know it's from your son biting her on the

2      back and lifting her out of the bed in your home?

3      Are you aware of that?

4  A.  If it's the incident I'm thinking of, the police

5      took the bite marks, and they didn't match Wil.  She

6      was like gone for the weekend and then came back.

7          MS. HUGHES:  I'm going to move to strike that.

8      I don't think he has any personal knowledge of that.

9          THE WITNESS:  It's on record.

10         THE COURT:  Overruled.

11         THE DEFENDANT:  Yeah.

12         THE COURT:  Be quiet.

13 Q    (BY MS. HUGHES) You're saying that you've seen a

14     report and that the police took bite marks?

15 A.  It was in the trial.

16 Q.  Were you testifying in that trial?

17 A.  It's on record in this courthouse.

18 Q.  Did you testify in that trial?

19 A.  Did I testify?

20 Q.  Uh-huh.

21 A.  I really can't remember now.  Maybe you can help me

22     out.  Did I testify?

23 Q.  I don't know.  Did you?

24 A.  I don't know.

25 Q.  Did your wife testify?