IN THE UNITED STATES DISTRICT
COURT FOR THE EASTERN DISTRICT OF
OKLAHOMA

William F. Laffoon
Petitioner
-vs-
Scott Nunn
Respondent

CASE No CIV-22-110-RAW-KEW

FILED
JUL 15 2022
BONNIE HACKLER
Clerk, U.S. District Court
By _____ Deputy Clerk

RESPONSE BRIEF

Comes Now the Petitioner William F. Laffoon of the Muscogee Creek Nation Appearing Pro Se respectfully requesting this Honorable Court to deny the Respondents Pre answer Motion to dismiss Petitioners Habeas Corpus because this Jurisdictional issue Cannot Be barred or Waived Under Prevailing Oklahoma Law, issues of subject Matter Jurisdiction are Never Waived and Can Never be barred and Can therefore be brought in a Collateral review Proceeding, Wallace v State, 935 P.2d 366 372 (Okla. Crim. App. 1997); See Also Triplet v Franklin, 365 Fed. Appx 86, 95 (10th Cir, 2010) recognizing that in Oklahoma, issues of Subject Matter Jurisdiction are not Waivable and Can be raised for the first time in Collateral Proceedings

1

Wackerly v State, 237 P.3d 795 797 (Okla. Crim. App. 2009) Considering "Indian Country Jurisdictional Claims that the Crime occurred on Federal land raised in Petitioner's Second Application for Post Conviction Relief in 2018 Where the Petitioner Was told to "Wait until Murphy became Law, and then Refile His Post Conviction Relief and the illegal Sentence Would be dismissed and Vacated." The Petitioner did as He Was told By Wagoner County District Court, and the Oklahoma Court of Criminal Appeals. July 9th 2020 when the U.S. Supreme Court Ruled on McGirt vs Oklahoma U.S. 591 2020.) Unlike the fullblood Indian McGirt from Wagoner County the Petitioner's illegal sentence Was not Dismissed and Vacated and He did not get a fair Federal Trial in CR-21-013-DCJ in this Honorable Court. The Petitioner Has been Prejudiced against Because He is only 1/8 Cherokee and 1/128th Creek. The Petitioner and the Victim in this Domestic Violence Case CF-2010-153 Are Cherokee and Creek Mix, Both are Enrolled Members and Come from a long line of fullbloods Dating Back over 500 Years." The Creek Treaty of June 14th 1866. The Petitioners Creek and Cherokee Indian blood The McGirt Ruling and Murphy v Royal 2017

2

are all standing on a very firm foundation of Retroactivity and the State of Oklahoma Has No Jurisdiction over the Petitioner His Wife or any of His Family in the Past, Present or future and the Respondant has failed to show this Honorable Court where the U.S. Supreme Changed Their Ruling in McGirt vs Oklahoma U.S. 591 2020 Newly Discoverd Ground Breaking Law of the Land that Was over 150 years late. The Respondent failed to show the Change in the High Courts Because it Never Happened and it Will Never Happen in Honor of the Honorable Ruth Bader Ginsburg. A Court ought not Be Effected by the Weather of the Day but it Will be Effected by the Climate of the Error. the damage has been done and this bell Cannot be unrung. See Exhibit A B and C

3

that the Creek nation has retained power to "fix the terms upon which non citizens might conduct business within its territorial boundaries" and has not "lost the power to govern the people within its borders." *Buster v Wright*, 135 F. 947, 951-52 (8th Cir. 1903) *appeal dismissed* 203 U.S. 599, 27 S.Ct. 777, 51 L.Ed 334 (1906)[12]

The reservation boundaries set by Congress in as to the Creek Nation boundaries qualifies as an area defined under 18 U.S.C. § 1151 (a).[13] As such, and based on an understanding of OKLA. CONST. Art. 1, § 3, federal jurisdiction is exclusive to "all lands lying within said limits owned or held by any Indian tribe". *Id.*[14] *see also: Solem*, 465 U.S. at 475; *and see, Mashunkashey v Mashunkashey*, 191 Okla. 501, 1134 P.2d 976 (Okla. 1942)

None of the acts of Congress ever diminished the reservation[15] boundaries of the Creek Indian Nation, including those areas where the event disputed occurred, *i.e.*, 21113 East 32nd

---

dissolution of the tribal governments of the Choctaw, Chickasaw, Cherokee, Creek, and Seminole tribes", Act of June 21, 1906, ch. 3504, 35 Stat. 325, 342. The "Five Tribes Act" thus recognized that the Creek Nation's government continued to exist in full force and effect and, notably, it did not terminate the Creek Reservation's borders. Such action further reinforced the promise "no part of the land granted to them shall ever be embraced in any Territory or State". *Choctaw Nation*, 397 U.S. at 635

[11] Under the *Indian Self-Determination and Education Assistance Act of 1975*, PL 93-638, the Creek Nation retained the sovereign right to operate as independent an Nation. Under such Act, the Creek Nation retained the freedom to negotiate with the federal government so that the tribe could hold elections, take over administration of the health services, contract BIA programs, begin businesses and, most importantly for purposes of this collateral proceeding, retain reservation tribal boundaries for establishment of the Creek Nation.

[12] As Lyndon Baines Johnson, President of the United States of America, noted:

> "We must affirm the right of the first Americans to remain Indians while exercising their rights as Americans. We must affirm their right to freedom of choice and self-determination. We must seek new ways to provide federal assistance to Indians-with the new emphasis on Indian self-help and with respect for Indian culture. And we must assure the Indian people that it is our desire and intention that the special relationship between the Indian and his government grow and flourish. For, the first among us must not be the last."

LBJ, Message to Congress "*The Forgotten American*," March 6, 1968.

[13] Courts, too, recognized that the reservation endured. After the Oklahoma Enabling Act, Act of June 16, 1906, ch. 3334, Pub. L. No. 59-233, 34 Stat. 267, *U.S. Express Co. v. Friedman*, 191 F. 673 (8th Cir. 1911), rejected the argument that the "Indian Territory ceased to be 'Indian country' upon the admission of Oklahoma as a state," observing that the Five Tribes "owned about 3,000,000 acres or more of land," and "[i]t would indeed be difficult to show how this land ceased to be Indian country." *Id.* at 678-79.

[14] In 1906, Congress enacted the Oklahoma Enabling Act, Act of June 16, 1906, ch. 3334, Pub. L. No. 59-233, 34 Stat. 267 ("Enabling Act"). While paving the way for statehood, Congress mandated that nothing in the new constitution "limit or impair the rights of person or property pertaining to the Indians of said Territories," or "limit or affect the authority of the Government of the United States to make any law or regulation respecting such Indians, their lands, property, or other rights." Enabling Act § 1. The Act thus preserved "the control of the United States of the large Indian reservations …of the new state." *Coyle v. Smith*, 221 U.S. 559, 570 (1911).

[15] The term Indian reservation and Indian allotment has been used in various ways to define 'Indian country'. *Indian Country, U.S.A. v Oklahoma ex. rel. Okla. Tax Comm'n*, 829 F.3d 967, 973 (10th Cir. 1987) *cert. denied* 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988), citing *Cohen's Handbook of Federal Indian Law* at 34-

Street, Broken Arrow, OK, 74014, Wagoner County, State of Oklahoma, and, as such, retains its 'Indian country' status. (See: Exhibit I, Letter from Creek Nation of Oklahoma Housing authority). No matter how strong the argument made by the State, the boundaries remain intact today,[16] and nothing said can work to alter this fact. As the Supreme Court recently so eloquently stated "we cannot remake history". *Nebraska v Parker*, ___ U.S. ___, ___, 136 S.Ct. 1072, 1082 (2016)[17]

The Creek Nation and its territorial boundaries remain intact today. Thus, the location within such territorial boundaries where Petitioner (an Indian) committed the offense convicted of can be seen to have occurred in 'Indian country'. Accordingly, jurisdiction to prosecute the offenses charged in Wagoner County Oklahoma Felony Information CF-2010-153 rests exclusively with the Federal Government.

(f.)   **Establishment of the location of the offense as 'Indian country' under 18 U.S.C. 1151 (b) and (c)**

As argued, the offenses were alleged to have occurred at 21113 East 32nd Street, Broken Arrow, OK, 74014, City of Broken Arrow, County of Wagoner and State of Oklahoma. Not only is this location geographically within the boundaries of the Creek Indian Reservation as discussed, but the land and home is further distinguished because this location was purchased and paid for by moneys awarded to Petitioner's family by the Housing Authority of the Creek Indian Nation on June 12, 2001. (See Exhibit A)

This home remains in the sole custody of the Laffoon family of the Creek Indian Nation, was purchased by and thru the Creek Indian nation and qualifies as 'Indian country' under 18 U.S.C. 1151 (b) and (c). The home constitutes the "purest form of 'Indian country'", *see: Indian Country, U.S.A. v Oklahoma ex. rel. Okla. Tax Comm'n*, 829 F.3d 967 (10th Cir. 1987) and falls squarely within the jurisdiction of the Muscogee (Creek) Indian Court.[18]

---

38 (R. Strickland ed. 1982) Gradually, the term has come to describe "federally-protected Indian tribal lands", *Id*,. at 35 n. 66, meaning those lands which Congress has set aside for tribal and federal jurisdiction. *cf. Solem v Bartlett*, 465 U.S. 463, 468-69 (1984)

[16]   Congress characterized those lands for the Creek Indian tribe as an "Indian reservation" and has never diminished those boundaries using express language of "cession" since that date. *see South Dakota v Yankton Sioux Tribe*, 522 U.S. 329 (1894 Act); *Solem*, 465 U.S. at 464 (1984) (1908 Act); *Rosebud Sioux Tribe v. Kneip*, 430 U.S. 584, 585 (1977) (1904, 1907, and 1910 acts); *DeCoteau v. Dist. Cty. Ct. for Tenth Judicial Dist.*, 420 U.S. 425, 441-42 (1975) (1891 Act); *Mattz v Arnett*, 412 U.S. 481 at 484-85 (1973) (1892 Act); *Seymour v. Superintendent of Wash. State Penitentiary*, 368 U.S. 351, 354 (1962) (1906 Act).

[17]   As such, Courts do not lightly infer that Congress has exercised its power to disestablish or diminish a reservation. *see DeCouteau*, 420 U.S.at 444 (holding that "[The Supreme] Court does not lightly conclude that an Indian reservation has been terminated") Congress can so act to disestablish or diminish any reservation, but its intent "must be 'clear and plain'." *Yankton Sioux Tribe*, 522 U.S. at 343 (quoting *Dion*, 476 U.S. at 738-39)

[18]   *See*: **Muscogee (Creek) Indian Nation Court Rules and Procedures, Tit. 27 § 1-102 Jurisdiction:**

> "(A) (1) The Muscogee (Creek) Nation Indian Country Territorial Jurisdiction consists as: (1) Property owned by any Muscogee Citizen subject to federal jurisdiction against alienation or held in trust by the United States for the benefit of any Muscogee Citizen; or, (2) Property held in trust by the United States for the benefit of the Muscogee (Creek)

**(g.)  Conclusion**

It is undisputed that any Indian who commits a crime as enumerated under the *Indian Major Crimes Act* as proscribed at 18 U.S.C. § 1153 (a) while on any land within Indian country is subject to prosecution for such offense exclusively by a Federal Court. *see United States v Celestine*, 215 U.S. 278, 284-87 (1909)[19]; *United States v Thomas*, 151 U.S. 577, 585-86 (1894). When such facts are demonstrated establishing that 1) an Indian 2) while in Indian country 3) commits any criminal offense covered under the *Major Crimes Act*, such person is immune from State criminal prosecution for such criminal act.

The State of Oklahoma has the right to seek exclusive criminal and civil jurisdiction of events that occur within its geographical jurisdiction, but never has. One important law enacted in 1953, "Public Law 83-280" addressed state jurisdiction. It allowed some states "to assert limited civil and broad criminal jurisdiction in Indian country" *Indian Country, U.S.A.*, 829 F.2d at 980 (citing ch. 505, 67 Stat. 588 (Aug 15, 1953)) without tribal consent. A 1968 amendment to Public Law 83-280 made subsequent assumptions of jurisdiction subject to Indian consent. *see*: 25 U.S.C. §§ 1321(a), 1322(a), 1326, referred to as the *Indian Civil Rights Act*.[20]

However, the State of Oklahoma never acted pursuant to Public Law 83-280, or obtained tribal consent following the 1968 amended *Indian Civil Rights Act* and has thus never acquired jurisdiction over the Indian country. *see Cravatt v State*, 825 P.2d 277, 279 (Okla. Crim. App. 1992) (holding that "[Q]uite simply the State of Oklahoma does not have jurisdiction over crimes committed by or against an Indian in 'Indian country'" [because] "the State of Oklahoma has never acted pursuant to Public Law 83-280." (quoting *State v Klindt*, 782 P.2d 401, 403 (Okla. Crim. App. 1989)).

---

Nation; or, (3) any property owned by Muscogee (Creek) Nation; or, (4) Property which is otherwise constitutes Indian country as that term is used in 18 U.S.C. § 1151."

[19]  The Court explained in *Celestine* that reservation status depends on the boundaries Congress draws, not on who owns the land inside the reservation's boundaries: "When Congress has once established a reservation, all tracts included within it remain a part of the reservation until separated therefrom by Congress." *Celestine*, 215 U.S. at 285 This understanding of reservations has continued. *Solem*, 465 U.S. at 470

[20]  In 1990, the Attorney General for the State of Oklahoma noted:

> "Prior to the *Indian Civil Rights Act* of 1968, the State could have assumed jurisdiction over all Indian country merely by legislative act. In 1953, it was suggested by the Department of Interior that Oklahoma consider assuming such jurisdiction over Indian Lands under Public Law 280. Oklahoma declined to do so, and since the passage of the *Indian Civil Rights Act*, permission of the tribes is now a necessary prerequisite to the State assuming jurisdiction. *United States v Burnett*, 777 F.2d 593 (10th cir. 1985) *cert. denied*, 476 U.S. 1106, 106 S.Ct. 1952, 90 L.Ed. 2d 361 (1986)."

*Oklahoma Attorney Generals Opinion* No. 90-32, at 1, 22 Okl. Op. Atty. Gen 71 (Okla. A.G.), 1991 WL 576868

Having established Petitioner's standing as an Indian,[21] and that the offenses charged were listed as a crime covered under the *Indian Major Crimes Act*, and that the offenses occurred in 'Indian country' this Court is moved to weigh such argument as applied to the facts of this case. The fact is that the State's decision to prosecute this case, and trial Court's decision to deny post-conviction relief when the issue was raised in the *Application for Post-Conviction Relief* now under review, in light of prevailing Supreme Court case law, was so lacking in justification that this, in and of itself, constitutes error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement such that no fair-minded jurist can now conclude otherwise. *see: Woods v Etherton*, ___ U.S. ___, ___, 136 S.Ct. 1149, 1151 (2016) citing *White v Woodall*, ___ U.S. ___, ___, 134 S.Ct. 1697, 1702 (2014); *see also, Harrington v Richter*, 582 U.S. 86, 101, 102, 131 S.Ct. 770 (2011)

As such, this Court must direct the sentence imposed in Wagoner County CF-2010-153, be Vacated, dismiss the Information with prejudice to re-filing, and release the Petitioner from such unlawful confinement without delay. Should the Federal Government choose to prosecute such offense is a decision that must be left to agents of the Federal Government.

1. Of what legal right or privilege do you believe you were deprived in your case?

Trial Court lacked jurisdiction to prosecute Petitioner under the felony information charged (see: above.)

2. In the facts of your case, what happened to deprive you of that legal right or privilege and who made the error of which you complain?

See: argument, *supra*.

3. List by name any case or cases that are very close factually and legally to yours as examples of the error you believe occurred in your case?

*Choctaw Nation v Oklahoma*, 397 U.S. 620, 635 (1970); *Solem v Bartlett*, 465 U.S. 463 (1984); *Wallace v State*, 935 P.2d 366, 372 (Okla. Crim. App. 1997); *see also Triplet v Franklin*, 365 Fed. Appx. 86, 95 (10th Cir. 2010) (unpublished); *Wackerly v State*, 237 P.3d 795, 797 (Okla. Crim. App. 2010) (considering jurisdictional claim that crime occurred on federal land raised in petitioner's second application for post-conviction relief); *Magnan v State*, 207 P.3d 397, 402 (Okla. Crim. App. 2009); and, *see: State v Vallencia*, 241 Ariz. 206, 386 P.3d 392, *cert denied*, 386 S.Ct. 467 (11/27/2017), 2017 WL 2424075 (11/27/2017) (a defendant is entitled to post-conviction relief when "[t]here has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence . . . ".

---

[21] To establish status as an Indian, two elements should be satisfied: (1) that the person has a degree of percentage of Indian blood; and (2) that the person is recognized by some tribe as an Indian. *Goforth v State*, 644 P.2d 114, 116 (Okla. Crim. App. 1982) (Petitioner has satisfied this requirement with the BIA Certificate of Degree of Indian Blood attached to this trial Court Application.)

Exhibit C







8

# THE CERTIFICATE OF MAILING

I William Franklin Laffoon of the Muscogee Creek Nation Tribe do hereby Certify that I Sent My Response Brief By Legal Mail through the Law Library Supervisor Katrena Ellick on July 13th 2022 to the Federal Courthouse, United States District Court for the Eastern of Oklahoma located at 101 N. 5th ST. in Muskogee Oklahoma, 74401 on the Creek Reservation.

Respectfully Submitted By
William F. Laffoon of the
Muscogee Creek Nation on
7-13-22
William F. Laffoon 4408 64112

OK DOC# 256288
Federal Reg# 36438509
Federal Creek Indian Roll# 48250

9